UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| CHADWICK SMITH, Individually and for Others Similarly Situated,<br><br>vs.<br><br>GUIDANT GLOBAL, INC., and GUIDANT GROUP, INC. | § Civil Action No. 2:22-cv-01364-DSC<br>§<br>§ **JURY TRIAL DEMANDED**<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

---

**BRIEF IN SUPPORT OF
JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

---

Plaintiff Chadwick Smith (Plaintiff or Smith) and Defendants Guidant Global, Inc., and Guidant Group, Inc. (Defendants or Guidant) (collectively, the Parties), respectfully submit this brief in support of the Parties' Joint Motion for Approval of Collective Action Settlement, which asks the Court for an order approving the settlement the Parties reached in this action pursuant to 29 U.S.C. § 216(b).

**I.   INTRODUCTION.**

Smith, individually and on behalf of himself and the Opt-in Plaintiffs who filed consents joining this conditionally certified collective action under the Fair Labor Standards Act (FLSA) who have not otherwise released their claims against Guidant, and Guidant seek approval of the Parties' Settlement Agreement and Release (the Agreement). *See* Exhibit A, Settlement Agreement and

Release. Pursuant to the Agreement,[1] Guidant agrees to pay a Gross Settlement Amount of $1,750,000.00 to resolve the overtime and unpaid wage claims brought by Smith and the Opt-in Plaintiffs. As shown below, the Parties' Agreement is a reasonable compromise of a *bona fide* dispute that will adequately compensate Smith and the Opt-in Plaintiffs for the unpaid overtime alleged and will eliminate the need for the Parties to engage in further protracted and expensive litigation.

As such, the Parties seek an order from this Court approving their Agreement and dismissing the lawsuit with prejudice.

## II. BACKGROUND.

Smith filed this collective action on August 6, 2019. Doc. 1; *see also* Doc. 8. Smith alleged Guidant failed to pay him and other similarly situated workers overtime in accordance with the FLSA by paying them the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek (straight time for overtime). Doc. 8. Smith further alleged Guidant's decision to pay Smith and its other workers in this manner was not made in good faith and that Guidant's decision to do so willfully violated the FLSA. *Id.* Smith claimed he and others similarly situated were entitled to unpaid back wages, as well as liquidated damages, attorneys' fees, interest, and costs. *Id.*; *see also* 29 U.S.C. § 216.

After unsuccessfully seeking to dismiss Smith's Amended Complaint (Docs. 10, 20), Guidant filed its Answer to Smith's First Amended Complaint. *See* Doc. 23. Guidant denied all material allegations in Smith's Amended Complaint and argued that it did not employ Smith and the other workers subject to his complaint and, alternatively, that it properly classified Smith and the other workers subject to his Complaint as exempt employees, that it paid them properly under the FLSA, and that its decision to pay and classify these workers was made in good faith and was not a willful

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them as those defined in the Parties' Settlement Agreement and Release (Ex. A).

violation of the FLSA. *Id.*

Smith initially moved for conditional certification on January 28, 2020, which Guidant opposed. *See* Docs. 30, 34. While the Court determined Smith sufficiently demonstrated a class of similarly situated workers existed, it denied Smith's motion without prejudice because it was concerned the proposed putative class would not be manageable based on Guidant's claims concerning the size of the class. Doc. 43. Thereafter, the Parties conducted extensive discovery concerning the scope and manageability of the putative class and Smith filed a second motion for conditional certification seeking conditional certification of a narrower class, which Guidant again opposed. *See* Docs. 92, 97. Ultimately, the Court conditionally certified this matter as a collective action on July 30, 2021, and authorized Smith to send notice to:

> All current and former power industry workers who worked for, or on behalf of, Guidant who were paid and/or billed on a straight time for overtime basis at any time in the last 3 years, and who were assigned to Duke and/or Entergy.

*See* Doc. 116. In total, 269 individuals filed consents joining this lawsuit as Opt-in Plaintiffs. The Parties agree that many of these individuals released their claims against Guidant through settlements in similar FLSA lawsuits with companies who sourced workers to Guidant. *See* Ex. A-2. The Parties agree these individuals will not receive any monies under their Agreement and to dismiss these individuals' claims. Ex. A at ¶¶ 7(i), 14(c); *see also* Ex. A-2.

Throughout this litigation, the Parties vigorously pursued their positions and the rights of their clients through extended legal and factual analysis, discovery (including third-party discovery), significant motion practice, and the exchange of information (both informally and formally). Ultimately, the Parties exchanged tens of thousands of documents. This significant exchange of information and data made the Parties particularly informed about the merits of Smith and the Opt-in Plaintiffs' claims and Guidant's defenses.

Following three failed attempts to settle this matter through mediation, the Parties attended a

full-day mediation on behalf of Smith and the Opt-in Plaintiffs with experienced wage-and-hour mediator Reid Estes January 18, 2022. Prior to this mediation, the Parties exchanged extensive information and data relating to Smith and the Opt-in Plaintiffs' damages and engaged in good faith, arm's-length negotiations. While the Parties did not settle this matter during mediation, they continued to negotiate in good faith and subsequently reached an agreement in principle to settle Smith and the Opt-in Plaintiffs' claims with Mr. Estes' assistance in the weeks that followed their mediation. The Parties then spent several months memorializing their Agreement, reaching an agreement as to the specific terms of the Agreement they now ask the Court to approve, and attempting to resolve related cases. *See* Ex. A.

The Parties and their respective counsel believe it is in the Parties' best interests to resolve this matter at this juncture. Smith and Class Counsel, acting in the best interest of the members of the conditionally certified collective action who have not released their claims against Guidant, wish to resolve this matter in a fair and cost-effective manner that would benefit all Plaintiffs without the expense, delay, diversion, and risk of continued protracted and complex litigation. Guidant also wishes to avoid the expense, burden, diversion, and risk of continued protracted litigation and wishes to resolve this matter on the agreed-upon terms. The Parties acknowledge their claims and defenses pose risks which informed, in part, formed their decision to resolve the *bona fide* disputes between them through settlement.

At all times, the negotiations leading to the Parties' Agreement were adversarial and all Parties were represented by counsel who are highly experienced in wage-and-hour class and collective actions. The Parties have memorialized their agreed proposed resolution of this lawsuit in their Agreement (Ex. A). The Agreement represents a fair and reasonable compromise of the Parties' *bona fide* dispute, and the Court should approve the same.

**III.   SETTLEMENT TERMS.**

   **A.   Settlement Amount and Payments to Smith and the Opt-in Plaintiffs.**

The Agreement covers the claims of Smith and the 155 Opt-in Plaintiffs who submitted forms consenting to join this litigation who had not previously released their claims against Defendants. Specifically, the Parties reached the following agreement to settle and resolve their *bona fide* dispute:

| | |
|---|---|
| Gross Settlement Amount: | $1,750,000.00 |
| Fee Award: | $700,000.00 |
| Class Counsel's Costs and Expenses: | $47,000.00 [2] |
| Enhancement Award: | $7,500.00 |
| Reserve Fund – ASAP: | $60,000.00 |
| Net Settlement Amount: | $935,500.00 |

*See generally* Ex. A.

The Parties agreed to settle Smith and the Opt-in Plaintiffs' claims for a gross amount of $1,750,000.00. *Id.* at ¶ 7(m). The Gross Settlement Amount includes: (1) an Enhancement Award for named Plaintiff Smith; (2) Class Counsel's Fee Award; (3) Class Counsel's out-of-pocket litigation costs and expenses; and (4) settlement payments to Smith and the Opt-in Plaintiffs, which will be paid on a *pro rata* basis pursuant to the calculation described in ¶ 16(b) of the Agreement. *Id.* at ¶¶ 7(k)-(n), 16. Specifically, Settlement Checks will be distributed on a *pro rata* basis to Smith and each eligible Opt-in Plaintiff dependent on the hours worked and pay received *Id.* at ¶ 16. Class Counsel calculated the amount of back wages allegedly owed to Smith and each Opt-in Plaintiff during the Class Period based on Guidant's and/or third-parties' records of each Plaintiff's compensation received and hours worked. *Id.* Guidant approves of Class Counsel's settlement allocations to Smith and the Opt-in Plaintiffs. The Parties' Agreement represents a substantial recovery for Smith and the eligible Opt-in Plaintiffs considering the ongoing risks of litigation, the defenses at issue, and the real possibility of a

---

[2] This figure is Class Counsel's out-of-pocket costs and expenses incurred to-date ($42,692.18) plus additional necessary funds to administer the settlement. The Parties' Agreement states that recoverable costs shall not exceed $47,000.00. Ex. A at ¶ 7(n).

protracted fight for unpaid overtime.

The Settlement Checks will be distributed with an agreed-upon Notice packet describing the important terms of the settlement, the amount of the individual settlement awards and how they were calculated, and the effect of cashing a settlement check. Ex. A at ¶¶ 7(n), (r), 18; Ex. A-3. The Notice will also provide Plaintiffs an opportunity to reach out to Class Counsel for more information if they have questions. *Id.* The accompanying Settlement Checks will be distributed in two checks to Smith and the eligible Opt-in Plaintiffs. *Id.* at ¶ 17. Half of each settlement payment will be reported on an IRS W-2 form and represents payment for alleged unpaid overtime. The other half will be reported on an IRS Form 1099 and represents payment for non-wage penalties and liquidated damages. *Id.* Guidant is separately responsible for payment of the employer's share of payroll taxes resulting from the W-2 portion of the settlement payments. *Id.* Smith and the Opt-in Plaintiffs will have 180 days to deposit the Settlement Checks. *Id.* at ¶ 19.

### B. Release of Claims.

Smith will be subject to a general release of all claims against Guidant, his staffing company, and the Guidant customer to which he was assigned, in exchange for the consideration he will receive pursuant to the Parties' Agreement, including for his Enhancement Award. *Id.* at ¶ 8(c). The eligible Opt-in Plaintiffs will only release Guidant, their staffing companies, and the Guidant customer to which they were assigned from all wage and hour claims. *Id.* at ¶ 7(p). Only those individuals who have already opted into this collective action by filing their consent with the Court and who have not previously released their claims against Guidant will receive a Settlement Check and release their claims under the Agreement by depositing, endorsing, or otherwise negotiating the Settlement Check. *Id.* at ¶¶ 7(i), 8(b), 19; *see also* Ex. A-2.

### C. Enhancement Award.

The Agreement provides that Smith will receive an Enhancement Award from the Gross

Settlement Amount in the total amount of $7,500.00 for his leadership and active participation in this lawsuit and in exchange from resolution and release of his claims against Guidant in this litigation, as well as any claims arising out of or relating to his employment or the termination of his employment with Guidant. *Id.* at ¶¶ 7(k), 8(c). The Enhancement Award shall be paid in addition to the Settlement Check owed to Smith.

### D. Class Counsel's Separately Negotiated Fee Award and Out-of-Pocket Expenses.

Class Counsel's separately negotiated Fee Award accounts for 40% of the Gross Settlement Amount. *Id.* at ¶¶ 7(l), 14(b). Specifically, the Parties agree that Class Counsel shall receive $700,000.00 in attorneys' fees, as well as reimbursement of their out-of-pocket litigation costs in an amount up to $47,000.00. The Parties agree both amounts are fair and reasonable to compensate Class Counsel for their efforts bringing and prosecuting this collective action. The Parties contemporaneously move the Court to approve Class Counsel's Fee Award and payment of their out-of-pocket litigation costs under the Agreement.

### IV. ARGUMENT & AUTHORITY.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee … affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees in this Circuit: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC,* 11 F.Supp.3d 474, 476 (E.D. Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor,* 679 F.2d 1350, 1354 (11th Cir. 1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania,* C.A.

1:08–cv–01493, 2013 WL 4041681, at *3 (M.D. Pa. Aug. 8, 2013) (quoting *Lynn's Food Stores, Inc.,* 679 F.2d at 1352); *Vargas v. Gen. Nutrition Centers, Inc.*, C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

### A. A *Bona Fide* Dispute Existed.

A dispute is "*bona fide*" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.,* C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (quoting *Morris v. Penn Mut. Life Ins. Co.,* CIV. A. No. 87-7063, 1989 WL 14063, at *4 (E.D. Pa. 1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching…." *Brumley v. Camin Cargo Control, Inc.*, C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food,* 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co.*, C.A. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[3] This inherent inequality, of course, is diminished when workers are represented by experienced counsel. *See, e.g., Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (giving weight to the fact that "plaintiffs were represented by highly competent counsel"); *see also Fernandez v. A-1 Duran Roofing, Inc.,* 2013 WL 684736, at *1 (S.D. Fla. Feb. 25, 2013) (finding court

---

[3] *Brooklyn Savings Bank*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

approval of an FLSA settlement unnecessary where "both Parties were represented by counsel and therefore negotiated a settlement … in an adversarial proceeding").

Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co., Inc.*, C.A. 1:07-cv-08718, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca*, 948 F. Supp. 2d at 365 (internal quotes omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).

There is no question the Parties' Agreement is a result of fiercely contested litigation. The Parties resolved this lawsuit after nearly three years of litigation only after dozens of contested motions (relating, among other things, to dismissal, conditional certification and notice, and discovery disputes), numerous depositions, substantial written discovery, and the production of tens of thousands of pages of documents, and multiple day-long mediations in this and related cases.

The Parties vehemently contested the claims and defenses asserted. Smith claimed Guidant paid him and the Opt-in Plaintiffs straight time for overtime in violation of the FLSA. *See* Doc. 8. Guidant consistently denied Smith's allegations and asserted numerous affirmative defenses relating to liability, most notably that it did not employ Smith and the Opt-in Plaintiffs and that, if it did, it properly classified and paid them as exempt employees. *See* Doc. 23. The Parties disputed liability in this case, and only through ongoing arm's-length negotiations were they able to reach a compromise. Further, the Parties contested whether Guidant's classification and pay policy regarding Smith and the

9

Opt-in Plaintiffs was made in good faith, or whether Guidant's alleged violations of the FLSA were willful. *See* Doc. 8 *cf.* Doc. 23.

Smith continues to believe the claims he seeks to settle here have merit, but he and Class Counsel recognize and acknowledge the uncertain outcome and risk of continuing with this litigation. Smith also recognizes the expense and complexity of continued proceedings necessary to prosecute the claims through trial as well as the difficulties and delay inherent in FLSA misclassification litigation. He also believes the resolution set forth in the Parties' Agreement confers substantial benefits to him and the Opt-in Plaintiffs. Based on this evaluation, Smith and Class Counsel have determined the Parties' Agreement is in Smith and the Opt-in Plaintiffs' best interests.

Guidant vigorously denied and continues to dispute all the claims alleged in this litigation and denies any and all allegations of wrongdoing, fault, liability, or damage of any kind to Smith and the Opt-in Plaintiffs. Like Smith, Guidant recognizes the risks and potential costs of continued litigation compared with the benefit of the Parties' proposed Agreement and desires to settle this lawsuit as set forth in the Agreement.

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is no question a *bona fide* dispute exists. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them.

### B.    The Parties' Proposed Agreement is Fair and Reasonable.

Courts presented with a proposed settlement of an FLSA claim engage in a two-part analysis. First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.,* C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). If it is, the Court next considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.* at *4; *see also Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

"It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013). The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (quoting *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at 18 (D.N.J. Apr. 8, 2011)). "In general, settlement is the preferred means of resolving litigation, and there remains a 'strong presumption' in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Deitz*, 2013 WL 2338496, at *4 (internal citations omitted).

The Parties' Agreement was the product of fair and honest arm's-length negotiations by experienced wage-and-hour class/collective action counsel. The Agreement is not illegal, a product of collusion, or against the public interest. The Agreement does not grant preferential treatment to the named plaintiff (Smith) and does not provide excessive compensation to Class Counsel under the circumstances. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). The Parties' Agreement is the product of arm's-length negotiations that occurred after nearly three years of hotly contested litigation. *See Lynn's Food Stores*, 679 at 1354 (finding FLSA settlement to fair based on the contested litigation history).

Moreover, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v.*

11

*Pennsylvania Dep't of Corrs.*, 876 F. Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, the Parties' Agreement will provide fair pecuniary relief to Smith and the Opt-in Plaintiffs in the form of Settlement Checks in exchange for a limited release of their wage-and-hour claims and eliminates the risks both Parties would face if this complex litigation continued to resolution on the merits. The Parties agree the settlement, including the allocations to Smith and the Opt-in Plaintiffs, is fair and reasonable. *Id.*

If the Parties had not agreed to settle, both sides would require substantial additional discovery (including numerous costly depositions) to ready this case for trial. Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the Court should not have to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz,* 2013 WL 2338496, at *5. Moreover, if the litigation had continued, the Parties would face many obstacles and uncertainties, including motions for summary judgment and/or decertification and potentially a trial. The Parties' Agreement fairly compensates Smith and the Opt-in Plaintiffs and eliminates the possibility of dismissal, decertification, or loss at trial and brings them value now (as opposed to years from now). The substantial benefit Smith and the Opt-in Plaintiffs will immediately receive is a significant factor weighing in favor of approval. As is the fact that Smith, the representative plaintiff, agrees the terms of the Agreement are fair and reasonable. Plaintiffs' positions strongly support the approval of the Agreement.

### C.     Smith's Enhancement Award is Reasonable.

The Agreement provides for an Enhancement Award payment to Smith totaling $7,500.00 in recognition of the services he performed on behalf of all Plaintiffs and in exchange for the broader release he is providing Guidant. Ex. A at ¶¶ 2(d), 7(k), 8(c), 14(a). This payment is in addition to Smith's Settlement Checks he will receive from the Net Settlement Amount.

The proposed Enhancement Award is reasonable and Guidant agrees to the same. *See, e.g.*, *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL5841177, at *8, *13 (S.D.N.Y. May 28, 2009) (awards of $7,500 each to three named plaintiffs, representing approximately 3 percent of the total $710,000 settlement amount, was reasonable). The Enhancement Award represents a mere .0045% of the Gross Settlement Amount and is intended to recognize Smith's initiative and efforts on behalf of the Opt-in Plaintiffs and the time and effort he contributed to this lawsuit and the settlement process over the last few years.

Through the course of this litigation, Smith participated in the conditional certification, discovery, and settlement process. Smith expended significant effort and time educating Class Counsel regarding his and similarly situated workers' job experiences, compensation, and hours worked, as well as Guidant's policies and procedures. He assisted Class Counsel throughout the litigation by providing documents and information related to his work for Guidant, helped obtain conditional certification by providing declarations in support thereof, and actively participated in settlement discussions and the settlement approval process to help ensure he and the eligible Opt-in Plaintiffs recover their allegedly unpaid wages. Smith participated in numerous telephone conferences with Class Counsel and their staff over the court of the litigation. And in bringing the claims against Guidant relating to its alleged FLSA violations, Smith took significant risks. Indeed, Smith faced potential retaliations and blackballing from prospective employers in the industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages.

Accordingly, the Court should approve the Enhancement Award to Smith in the total amount of $7,500.00 as provided in the Parties' Agreement.

### D. Class Counsel's Fee Award and Costs are Reasonable and Customary.

The Parties' Agreement provides that Class Counsel's Fee Award amounts to 40% of the Gross Settlement Amount and for reimbursement of Class Counsel's out-of-pocket litigation expenses. Specifically, the Parties agreed Class Counsel's Fee Award would be $700,000.00 and that Class Counsel would receive up to $47,000.00 to reimburse them for their out-of-pocket litigation expenses. Ex. A at ¶¶ 7(l), 14(b). Guidant does not oppose Class Counsel's application for these payments and costs.

While courts in the Third Circuit may evaluate the award of attorneys' fees through two established methods (the lodestar approach or the percentage of the recovery approach), the "[p]ercentage of recovery [method] is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 533 (E.D. Pa. 2016); *see also In re Diet Drugs*, 582 F.3d at 540 (finding the percentage-of-recovery method is generally favored) (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted).

In determining what constitutes a reasonable percentage fee, courts consider the following factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by Plaintiffs to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Plaintiffs' counsel relative to the

efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *In re Prudential,* 148 F.3d at 342). These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest.'" *In re AT & T Corp.*, 455 F.3d at 166.

### 1. The Size of the Fund and the Number of Beneficiaries.

The results obtained here represent a significant benefit to Smith and the eligible Opt-in Plaintiffs in the face of the many legal and factual risks posed by litigation. Here, the Net Settlement Amount of $935,500.00 will be distributed to Smith and the eligible Opt-in Plaintiffs on a *pro rata* basis dependent upon the number of weeks of overtime at issue. *See* Ex. A at ¶ 16.

### 2. The Absence of Substantial Objections.

To date, there have been no objections to either the settlement terms generally or to the attorneys' fee request specifically. The absence of any objection weighs in favor of the fee request. *See Bredbenner*, 2011 WL 1344745, at *20.

### 3. Class Counsel's Skill and Efficiency.

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action wage-and-hour experience. *See* Exhibit B, Declaration of Andrew W. Dunlap, at ¶¶ 3-7. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a

contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. *Id.* at ¶¶ 10, 21. The Parties' Agreement, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA is a reflection of Class Counsel's experience. *Id.* at ¶¶ 3-20. This Agreement was reached after extensive fact discovery, including exchanging thousands of pages of documents, and ongoing arm's-length settlement negotiations between counsel for the Parties. *Id.* at ¶¶ 13, 18.

The Agreement provides Smith and the eligible Opt-in Plaintiffs with substantial benefits without having to wait for years of drawn-out litigation. This factor thus favors the requested fee.

### 4. The Complexity and Duration of Litigation.

As discussed above, this case has been pending for nearly three years and documents pertaining to Guidant's procedures and payments to Smith and the Opt-in Plaintiffs were obtained through formal and informal discovery (including through third-party discovery). Given this discovery, this factor weighs in favor of awarding the requested fee. *Keller v. TD Bank*, N.A., No. CIV.A. 12-5054, 2014 WL 5591033, at *15 (E.D. Pa. Nov. 4, 2014). The parties engaged in analysis of wage-and-hour records for each plaintiff. Moreover, further litigation of this case without a settlement would be lengthy and expensive for both Parties, neither of whom desire to continue with this litigation.

### 5. The Risk of Nonpayment.

Class Counsel represented Plaintiffs entirely on a contingent basis, with no guarantee of payment, and there were significant hurdles to overcome in achieving the settlement. Ex. B at ¶¶ 10, 21. Class Counsel invested significant time and expense in litigating this matter despite the potential the Court would find no violation of the FLSA. Given these considerations, the significant risk of non-payment weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012).

16

### 6. Class Counsel Devoted Substantial Time to the Case.

Class Counsel consisted of a team of attorneys from three law firms, paralegals, and staff all dedicated to working up and prosecuting Smith and the Opt-in Plaintiffs' claims. This work included investigation and interviews with Plaintiffs, obtaining statements from Plaintiffs, reviewing documents produced by Guidant and its third-party vendors, significant motion practice (including motions to dismiss, motions for conditional certification, and numerous motions relating to discovery disputes), reviewing and analyzing time and payroll data, engaging in extensive settlement negotiations, and participating in four mediations to try to settle this matter. *See generally* Ex. B. These efforts support the approval of the fee requested. *See Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11.

### 7. Fee Awards in Similar Cases Support the Requested Fee Award.

The requested Fee Award is also consistent with awards in similar cases. *See* Ex. B at ¶ 26. The Third Circuit expressly noted fee awards generally range from 19% to 45% of the Gross Settlement Amount. *See Brumley*, 2012 WL 1019337, at *12 (approving fee of one-third of the common fund and citing *In re Gen. Motors.*, 55 F.3d at 822). "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *see Acevedo*, 2017 WL 4354809 at *18 ("[C]ourts have approved attorneys' fees in FLSA collective and class action settlement agreements 'from roughly 20-45%' of the settlement fund."). "Where the fees are set as part of negotiations between the parties, there is a greater range of reasonableness for approving attorney's fees." *Lliguichuzhca*, 948 F.Supp.2d at 366. On balance, then, the percentage fee negotiated by the Parties is not unreasonable relative to the "size of the fund created."

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see Craig*, 2013 WL 84928 at *12 ("In this region, '[a]ttorneys regularly contract

for contingent fees between 30% and 40% with their clients in non-class, commercial litigation' and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which falls at the low end of that range, is consistent with market rates.").

Here, Class Counsels' request for 40% of the Gross Settlement Amount adequately compensates Class Counsel for the significant work they did in this case and falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g., Alvarez v. BI Inc.*, Civ. A. No. 16-2705, 2020 WL 1694294, at *7 (E.D. Pa. Apr. 6, 2020) (approving fee award of 40% of the gross settlement amount in FLSA collective action); *Mabry v. Hildebrandt*, Civ. A. No. 14-5525, 2015 WL 502810, at *4 (E.D. Pa. Aug. 24, 2015) (allowing percentage-of-recovery for attorney's fees at 40% of the gross settlement amount); *Lyons v. Gerhard's Inc.*, Civ. A. No. 14-06693, 2015 WL 437514, at *5 (E.D. Pa. July 16, 2015) (approving fee award of 44% of gross settlement amount, noting "[a]s a percentage of total recovery, this fee is on the higher side, but it is not so high as to be unreasonable."); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F.Supp.2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)). The Fee Award of approximately 40% of the Gross Settlement Amount also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

### 8. Class Counsel's Out-of-Pocket Expenses Should Be Approved.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). "[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014); *see, e.g., Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving

reimbursement of costs including (1) "travel and lodging," (2) "local meetings and transportation," (3) "depositions," (4) "photocopies," (5) "messengers and express services," (6) "telephone and fax," (7) "Lexis/Westlaw legal research," (8) "filing, court and witness fees," (9) "overtime and temp work," (10) "postage," and (11) "the cost of hiring a mediator").

Here, Class Counsel's out-of-pocket litigation expenses are capped at $47,000.00. Ex. B at ¶ 25. Class Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, copying, travel expenses for case related hearings, mediations, and depositions, depositions, transcripts, necessary third-party discovery to obtain damages information, multiple mediations, client meetings, and legal research. *Id.* The reported expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement and Guidant does not object to the same. Further, the Agreement appropriately limits Class Counsel's recovery to actual costs incurred to date plus the estimated costs to approve and administer the settlement.

### V. DISMISSAL OF LAWSUIT WITH PREJUDICE.

In addition to approving the Agreement, Smith requests that the Court dismiss this lawsuit with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

### VI. CONCLUSION.

For these reasons, Smith respectfully requests that the Court grant the Joint Motion to Approve Collective Action Settlement and to Dismiss Lawsuit with Prejudice.

Respectfully submitted,

| | |
|---|---|
| By: /s/ *Andrew W. Dunlap*<br>**Michael A. Josephson**<br>TX Bar No. 24014780<br>**Andrew W. Dunlap**<br>TX Bar No. 24078444<br>**Lindsay R. Itkin**<br>TX Bar No. 24068647<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>713-352-1100 – Telephone<br>713-352-3300 – Facsimile<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br>litkin@mybackwages.com<br><br>**Richard J. (Rex) Burch**<br>TX Bar No. 24001807<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>713-877-8788 – Telephone<br>713-877-8065 – Facsimile<br>rburch@brucknerburch.com<br><br>**Attorneys for Plaintiffs** | By: /s/ *Michael A. Pavlick*<br>**Michael A. Pavlick (P60914)**<br>**K&L GATES LLP**<br>210 Sixth Ave.<br>Pittsburgh, Pennsylvania 15222<br>412-355-6275 – Telephone<br>412-355-6501 – Facsimile<br>michael.pavlick@klgates.com<br><br>**Gregory N. Blase (P66079)**<br>**K&L GATES LLP**<br>State Street Financial Center<br>One Lincoln Street<br>Boston, Massachusetts 02111<br>617-261-3100 – Telephone<br>617-261-3175 – Facsimile<br>gregory.blase@klgates.com<br><br>**Attorneys for Defendants** |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties in accordance with the Federal Rules of Civil Procedure.

/s/ *Andrew W. Dunlap*
Andrew W. Dunlap